UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO.,<br>*Plaintiff*,<br><br>v.<br><br>WALTER OIL & GAS CORPORATION, GEMINI INSURANCE COMPANY, AND GULF OFFSHORE LOGISTICS, LLC.<br>*Defendants*. | CIVIL ACTION NO.:<br><br>JUDGE:<br><br>SECTION " "<br><br>MAGISTRATE: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Helmerich & Payne International Drilling Co. (hereinafter referred to as "**H&P**"), and files this Complaint for Declaratory Judgment, through which H&P seeks a judgment declaring (1) that Walter Oil & Gas Corporation ("**Walter**") and Gulf Offshore Logistics, LLC ("**Gulf Offshore**") are obligated to defend and indemnify H&P for any claims arising out of H&P providing labor and management services to Walter pursuant to a Platform Labor Services Contract in connection with Walter's operations on its platforms located in the Gulf of Mexico, including but not limited to all claims asserted by Gulf Offshore's employee, James Daub, in the matter entitled "*James Daub v. W&T Offshore, LLC, Helmerich & Payne International Drilling Co., et al.*," which bears Case No. 130199 on the docket of the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana (the "**Daub Lawsuit**"), (2) that Walter and Gulf Offshore were obligated to have H&P named as an additional insured and/or otherwise provide insurance coverage for the benefit of H&P under the policies of liability insurance procured by Walter and Gulf Offshore, as required under various contracts and agreements, and (3) that H&P is entitled to insurance coverage

pursuant to policies of liability insurance issued to Walter and Gulf Offshore, including but not limited to the policy of liability insurance issued by Gemini Insurance Company ("**Gemini**") to Walter. In support of this Complaint for Declaratory Judgment, H&P respectfully represents as follows:

## PARTIES

1.

Helmerich & Payne International Drilling Co. ("**H&P**") is a Delaware Corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Tulsa, Oklahoma. H&P's headquarters is located in Tulsa, Oklahoma. It is from this headquarters that H&P's officers direct, control, and coordinate H&P's activities. Accordingly, H&P's "principal place of business" is located Tulsa, Oklahoma. Therefore, H&P is now and has at all relevant times been a citizen of the states of Delaware and Oklahoma.

2.

Made Defendant herein is Walter Oil & Gas Corporation ("**Walter**") is a Texas corporation with its principal place of business in Houston, Texas. Therefore, Walter is now and has at all relevant times been a citizen of the state of Texas.

3.

Made Defendant herein is Gemini Insurance Company ("**Gemini**") is an Illinois corporation with its principal place of business in Greenwich, Connecticut, which issued an Energy Commercial General Liability Policy, bearing Policy No. JGH2002276, to Walter, effective June 15, 2015 through June 16, 2016. Therefore, Gemini is now and has at all relevant times been a citizen of the states of Illinois and Connecticut.

4.

Made Defendant herein is Gulf Offshore Logistics, LLC ("**Gulf Offshore**") is a Louisiana limited liability company with its principal place of business in Raceland, Louisiana. The citizenship of a limited liability company is determined by the citizenship of all of its members.[1] Upon information and belief, Gulf Offshore's members are Todd P. Danos and Joel Norris Broussard, both of whom are residents and citizens of the state of Louisiana. Therefore, Gulf Offshore is now and has at all relevant times been a citizen of the state of Louisiana.

## JURISDICTION AND VENUE

5.

This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 as:

a. There exists complete diversity between H&P, a citizen of the states of Delaware and Oklahoma, and defendants, Walter, a citizen of the state of Texas, Gemini, a citizen of the states of Illinois and Connecticut, and Gulf Offshore, a citizen of the state of Louisiana; and

b. The amount in controversy exceeds the jurisdictional amount of $75,000.00, as more fully set forth herein.

6.

Additionally, this Court has original jurisdiction as to the claims against Walter pursuant to 43 U.S.C. §§ 1333 and 1349, the Outer Continental Shelf Lands Act ("OCLSA"), because H&P's claims against Walter arise out of a contract pursuant to which a majority of the performance under the contract was to be performed on an OCSLA situs.

---

[1] *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

7.

Additionally, this Court has original jurisdiction as to the claims against Gulf Offshore pursuant to 28 U.S.C. § 1333, admiralty and general maritime jurisdiction, because H&P's claims against Gulf Offshore arise out of a contract which is maritime in nature and the use of vessels played a substantial role in the completion of the contract.

8.

This civil action for declaratory judgment is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure.

9.

Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and 43 U.S.C. § 1349(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred on the Outer Continental Shelf off the coast of Louisiana, specifically south of Port Fourchon and Houma, which are within the Eastern District of Louisiana. Additionally, the obligations under the relevant contractual agreements between the parties occurred or were to occur in this same area.

**FACTUAL BACKGROUND**

10.

On June 2 2014, H&P and Walter entered into the "Platform Labor Services Contract (Operations) between Walter Oil & Gas Corporation and Helmerich & Payne International Drilling Co. for Platforms EW834, EW910, and ST311" (the "**Walter Contract**"), pursuant to which H&P was to provide labor and management services to Walter in connection with Walter's operations on its platforms located in the Gulf of Mexico, including its platform on Ewing Bank Block 910 (the "**EW 910 Platform**").

11.

On October 31, 2008, Gulf Offshore and W&T Offshore, Inc. entered into the "Blanket Time Charter between Gulf Offshore Logistics, LLC and W&T Offshore, Inc." (the "**Gulf Offshore Charter**"), pursuant to which Gulf Offshore provided vessels for use by W&T Offshore, Inc. and its affiliated and subsidiary companies, including Walter. The Gulf Offshore Charter is a maritime contract governed by the general maritime law, as vessels played a substantial role in the completion of the contract.

12.

On March 1, 2014, Walter and W&T Offshore, Inc. entered into the "Offshore Operating Agreement between W&T Offshore, Inc. (Operator), and Walter Oil & Gas Corporation and W&T Energy VI, LLC (Non-Operators) Covering OCS-G 13079 (Ewing Bank 910) and OCS-G24990 (South Timbalier 320)" (the "**Offshore Operating Agreement**"), pursuant to which W&T Offshore, Inc. was appointed as operator of various leases, including OCS-G 13079 (Ewing Bank 910) and the EW 910 Platform.

13.

Also on March 1, 2014, Walter and W&T Offshore, Inc. entered into the "Participation Agreement by and among Walter Oil & Gas Corporation, W&T Energy VI, LLC, and W&T Offshore, Inc." (the "**Participation Agreement**"), pursuant to which Walter would serve as the contract operator of drilling operations on various leases, including OCS-G 13079 (Ewing Bank 910) and the EW 910 Platform.

14.

On October 20, 2014, Walter and W&T Offshore, Inc. entered into the "Platform Access Agreement by and between W&T Energy VI, LLC, W&T Offshore, Inc., and Walter Oil & Gas

Corporation" (the "**Platform Access Agreement**"), pursuant to which Walter and its employees, contractors, subcontractors, and other invitees were granted access to the EW 910 Platform.

15.

Gemini issued an Energy Commercial General Liability Policy, bearing Policy No. JGH2002276, to Walter, effective June 15, 2015 through June 16, 2016 (the "**Gemini Policy**"). Pursuant to the Walter Contract, H&P was added as an additional insured to the Gemini Policy by a General Change Endorsement on October 23, 2015, effective June 15, 2015.

16.

On September 27, 2015, James Daub, an employee of Gulf Offshore, allegedly sustained injuries while assisting with offloading operations on Walter's EW 910 Platform. On the date of the accident, H&P was working as a contractor for Walter pursuant to and under the terms and conditions of the Walter Contract. As a result of the accident, Mr. Daub filed the Daub Lawsuit on September 26, 2016, against H&P, Gulf Offshore, W&T Offshore, LLC, and their respective insurers. A copy of Daub's Petition filed in the Daub Lawsuit is attached as **Exhibit A**.

## THE WALTER CONTRACT

17.

The Walter Contract contains various provisions relating to the defense, indemnity, and insurance obligations of Operator (Walter) and Contractor (H&P).

18.

Section 16.1(c) of the Walter Contract specifies Walter's contractual obligations and responsibilities to H&P arising from any bodily injury, disease, or death of any person employed by or affiliated with either Walter or its other contractors and subcontractors of any tier as follows:

> Operator [Walter] shall release, defend, indemnify, and hold harmless [H&P] Contractor Group to the fullest extent permitted by law from and against any loss,

> damage, claim, suit, liability, judgment, and expense (including attorneys' fees and other costs of litigation) arising in connection herewith, resulting from or in any way related to the Work or the Worksite or operations conducted at the Worksite for bodily injury, disease or death of any member of the [Walter] Operator Group, without regard to the cause or causes thereof or the sole or concurrent negligence, fault or strict liability without fault of any member of the [H&P] Contractor Group including any claim based on the warranty of seaworthiness, and whether pre-existing or not.

"Operator Group" is defined in Section 1.1 of the Walter Contact as follows: "Operator Group means Operator [Walter], its parent and affiliated companies and entities, its working interest partners, joint owners, contractors and subcontractors of any tier (other than Contractor [H&P]), and the respective directors, officers, employees, agents, representatives and insurers of each of the foregoing."

19.

Additionally, Section 17.2 of the Walter Contract required Walter to include H&P as an additional insured on all of the insurance policies maintained by Walter in connection with the work performed on the EW 910 Platform, including each insurance policy identified in Section 17.1(b) of the Walter Contract. Section 17.1(b)(iii) of the Walter Contract provides a requirement that Walter procure:

> Comprehensive Commercial General Liability Insurance, including contractual liability covering Operator's [Walter's] obligation to defend and/or indemnify Contractor [H&P] hereunder, for personal injury or death and loss of or damage to property, arising out of or in any way connected with the performance of this Contract, or with the well(s), with minimum coverage of at least $100,000,000.00.

20.

Section 17.6 of the Walter Contract required Walter to bill H&P for the amount incurred in obtaining additional insured coverage for H&P. H&P promptly paid the amount of the additional insured premium incurred by Walter once Walter's insurance agent issued and sent the premium invoice to H&P.

7

21.

Pursuant to the terms of the Offshore Operating Agreement, W&T Offshore, Inc. was appointed and designated by Walter as the "operator" of the lease where the EW 910 Platform is located and therefore W&T Offshore, Inc. and its subcontractor Gulf Offshore are both part of Walter's Operator Group as defined under the Walter Contract. Accordingly, because W&T and Gulf Offshore are members of the Operator Group, Walter is expressly obligated to provide defense, indemnity, and additional insured coverage to H&P related to the claims asserted against H&P in the Daub Lawsuit because Mr. Daub's alleged injuries fall within "the extent of liabilities expressly assumed" under the Walter Contract. H&P is entitled to a declaratory judgment declaring that the aforementioned contractual obligations are owed by Walter to H&P.

22.

H&P has made multiple written demands to Walter requesting that Walter undertake the defense and indemnity of H&P and provide H&P with additional insured coverage in connection with the claims asserted against H&P in the Daub Lawsuit. Walter has denied each of H&P's demands.

## **THE GEMINI POLICY**

23.

Walter procured an Energy Commercial General Liability Policy, bearing Policy No. JGH2002276, from Gemini, effective June 15, 2015 through June 16, 2016. Pursuant to the Walter Contract, H&P was added as an additional insured to the Gemini Policy by a General Change Endorsement on October 23, 2015, effective June 15, 2015. H&P promptly paid the amount of the additional insured premium incurred by Walter as soon as Walter's insurance agent issued and sent the applicable premium invoice to H&P.

24.

H&P has complied with all requirements for coverage under the aforementioned policy and is entitled to declarations as follows: (i) that H&P is an additional insured under the Gemini Policy; (ii) that Gemini is obligated to provide additional insured coverage to H&P for any and all claims asserted against H&P in the Daub Lawsuit; (iii) that Gemini is obligated to provide a defense to H&P and reimburse H&P for all defense costs incurred by H&P to date in connection the Daub Lawsuit; and (iv) that Gemini is obligated to indemnify H&P for all claims asserted against H&P in the Daub Lawsuit up to the amount of the applicable limit set forth in the Gemini Policy.

25.

H&P has made multiple written demands to Gemini requesting that Gemini undertake the defense and indemnity of H&P and provide H&P with additional insured coverage under the Gemini Policy in connection with the claims asserted against H&P in the Daub Lawsuit. Gemini has denied each of H&P's demands.

**THE GULF OFFSHORE CHARTER**

26.

The Gulf Offshore Charter contains various provisions relating to the defense, indemnity, and insurance obligations of Gulf Offshore.

27.

Section 7.1 of the Gulf Offshore Charter specifies Gulf Offshore's contractual obligations and responsibilities to H&P arising from any bodily injury, disease, or death of any person employed by or affiliated with Gulf Offshore as follows:

> **OWNER [GULF OFFSHORE] SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS CHARTERER GROUP FROM AND AGAINST ANY CLAIMS IN RESPECT OF…PERSONAL OR BODILY INJURY TO…ANY MEMBER OF THE [GULF OFFSHORE] OWNER GROUP, IN ANY WAY DIRECTLY OR INDIRECTLY CAUSED BY, ARISING OUT OF OR RESULTING FROM THE PERFORMANCE OR ACTIVITIES UNDER THIS CHARTER…AND WHETHER SUCH DAMAGE, LOSS OR INJURY, DEATH OR DISEASE IS CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OR FAULT OF ANY INDEMNITEE.**

(emphasis in original).

28.

As an employee of Gulf Offshore, Mr. Daub is a member of the "OWNER GROUP", as defined in Section 1.2 of the Gulf Offshore Charter:

> "OWNER GROUP" shall mean: OWNER [Gulf Offshore], its parent, subsidiary and affiliated or related companies, its and their co-owners, partners and joint venturers, if any, the vessels and their owners, operators, masters and crews, and OWNER'S contractors and subcontractors, and their respective parents, subsidiary and affiliated or related companies, and any others for whom any of the foregoing may be acting, and the officers, directors, members, employees and business invitees lawfully on the chartered vessel or work sites and insurers of all of the foregoing.

Accordingly, Gulf Offshore is obligated to defend and indemnify members of the "Charterer Group" against any claims for personal or bodily injury by Mr. Daub.

29.

H&P is a member of the "Charterer Group", which is defined in Section 1.3 of the Gulf Offshore Charter as follows:

> "CHARTERER GROUP" shall mean: CHARTERER [W&T Offshore, Inc.], its parent, subsidiary and affiliated or related companies, its and their working interest owners, colessees, co-owners, partners, farmers, farmees, joint operators, and joint venturers, if any, and CHARTERER **[W&T Offshore]'s contractors . . . and subcontractors**, and their respective parents, subsidiary and affiliated or related companies, and any others for whom any of the foregoing may be acting, **and the**

10

officers, directors, members, employees, consultants and **business invitees** lawfully on the chartered vessel or work sites and insurers **of all of the foregoing**.

(emphasis added). As a subcontractor and business invitee of W&T Offshore Inc.'s contractor Walter, H&P was and is a member of the Charterer Group under the Gulf Offshore Charter.

30.

Additionally, Section 6 of the Gulf Offshore Charter required Gulf Offshore to include H&P as an additional insured on all of the insurance policies maintained by Gulf Offshore in connection with its services to the Charterer Group. Included among the requirements set forth in Section 6 are: (1) that Gulf Offshore shall include all members of the Charterer Group as additional insureds on its insurance policies, (2) that Gulf Offshore's policies will be primary, and (3) that, in the event of Gulf Offshore's failure to maintain the required insurance or a denial of coverage by its insurers, Gulf Offshore will defend and indemnify any member of the Charterer Group "against all claims, demands, costs, and expenses, including attorneys' fees

31.

Pursuant to the Gulf Offshore Charter, the "Charterer Group" includes "W&T's contractors and subcontractors," as well as any of "business invitees" of those contractors and subcontractors. The Participation Agreement and the Platform Access Agreement establish that: (1) Walter is designated as W&T Offshore, Inc.'s "contract operator" for the EW 910 platform, (2) Walter was a contractor of W&T Offshore, Inc., (3) W&T Offshore, Inc. expressly acknowledged the direct contractual relationship between Walter and H&P, and (4) H&P was present on the EW 910 Platform pursuant to its contract with and direction from Walter. These agreements establish and recognize the direct contractual links between W&T Offshore, Inc. and Walter and H&P; as such, H&P is a member W&T Offshore Inc.'s "Charterer Group" in the Gulf Offshore Charter. Further, as an employee of Gulf Offshore, Mr. Daub is part of the "Owner Group" as defined in Section

11

1.2 of the Gulf Offshore Charter. Consequently, under general maritime law, Gulf Offshore is expressly obligated to provide defense, indemnity, and additional insured coverage to H&P in response to Mr. Daub's claims for personal and bodily injury against H&P in the Daub Lawsuit.

32.

H&P has made multiple demands on Gulf Offshore requesting that Gulf Offshore undertake the defense and indemnity of H&P and provide H&P with additional insured coverage in connection with the claims asserted against H&P in the Daub Lawsuit. Gulf Offshore has denied each of H&P's demands.

## **DECLARATIONS SOUGHT**

33.

H&P repeats and incorporates paragraphs 1 through 32 as if set forth herein.

34.

H&P is entitled to the following declarations:

A. Pursuant to the Walter Contract, Walter is obligated to provide defense, indemnity, and additional insured coverage to H&P related to the claims asserted against H&P in the Daub Lawsuit;

B. Pursuant to the Walter Contract, Walter was obligated to procure a total of $100,000,000 in liability insurance with a waiver of subrogation in favor of H&P and to name H&P as an additional insured under such insurance policies;

C. H&P is an additional insured under the Gemini Policy;
   i. The Gemini Policy provides coverage for the claims asserted against H&P in the Daub Lawsuit; and,

      ii.    Gemini is obligated to provide a defense to H&P in connection with the Daub Lawsuit and to indemnify H&P against any and all claims and damages up to the amount of the Gemini Policy's limit;

D.  Pursuant to the Walter Contract and the Gemini Policy, Walter and Gemini are obligated to reimburse H&P for all defense costs incurred by H&P to date in connection with the Daub Lawsuit;

E.  Pursuant to the Gulf Offshore Charter, Gulf Offshore is obligated to provide defense, indemnity, and additional insured coverage to H&P related to the claims asserted against H&P in the Daub Lawsuit;

F.  Pursuant to the Gulf Offshore Charter, Gulf Offshore was obligated to procure liability insurance with a waiver of subrogation in favor of H&P and to name H&P as an additional insured under such insurance policies; and

G.  Pursuant to the Gulf Offshore Charter, Gulf Offshore is obligated to reimburse H&P for all defense costs incurred by H&P to date in connection with the Daub Lawsuit.

## RESERVATION OF RIGHTS

35.

H&P reserves its right to pursue additional claims and/or remedies arising from any other past, current, or future breaches by Walter, Gemini, and/or Gulf Offshore, as well as its right to supplement the claims raised in this Complaint as discovery unfolds.

## PRAYER FOR DECLARATORY RELIEF

**WHEREFORE**, Plaintiff, Helmerich & Payne International Drilling Co., through undersigned counsel, prays that defendants, Walter Oil & Gas Corporation, Gemini Insurance Company, and Gulf Offshore Logistics, LLC, be cited and served with a copy of this Complaint

for Declaratory Judgment, and after due proceedings are had, that this Honorable Court enter a declaratory judgment in H&P's favor, finding that:

(1) Pursuant to the Walter Contract, Walter is obligated to provide defense, indemnity, and additional insured coverage to H&P related to the claims asserted against H&P in the Daub Lawsuit;

(2) Pursuant the Walter Contract, Walter was obligated to procure a total of $100,000,000 in liability insurance with a waiver of subrogation in favor of H&P and to name H&P as an additional insured under such insurance policies;

(3) H&P is an additional insured under the Gemini Policy;

    a. The Gemini Policy provides coverage for the claims asserted against H&P in the Daub Lawsuit; and,

    b. Gemini is obligated to provide a defense to H&P in connection with the Daub Lawsuit and to indemnify H&P against any and all claims and damages up to the amount of the Gemini Policy's limit;

(4) Pursuant to the Walter Contract and the Gemini Policy, Walter and Gemini are obligated to reimburse H&P for all defense costs incurred by H&P to date in connection with the Daub Lawsuit;

(5) Pursuant to the Gulf Offshore Charter, Gulf Offshore is obligated to provide defense, indemnity, and additional insured coverage to H&P related to the claims asserted against H&P in the Daub Lawsuit;

(6) Pursuant to the Gulf Offshore Charter, Gulf Offshore was obligated to procure liability insurance with a waiver of subrogation in favor of H&P and to name H&P as an additional insured under such insurance policies;

(7) Pursuant to the Gulf Offshore Charter, Gulf Offshore is obligated to reimburse H&P for all defense costs incurred by H&P to date in connection with the Daub Lawsuit.

(8) H&P is entitled to recover costs of suit, including reasonable and necessary attorney's fees; and

(9) All such other or alternative relief as this Honorable Court may deem just and be competent to grant.

By: ___/s/ Timothy M. Brinks___
**MARK J. SPANSEL (#12314)**
**TIMOTHY M. BRINKS (#34461)**
**ADAMS AND REESE LLP**
701 Poydras Street, Suite 4500
New Orleans, LA   70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
mark.spansel@arlaw.com
timothy.brinks@arlaw.com
*Counsel for Plaintiff, Helmerich & Payne International Drilling Co.*